Filed 6/21/21  P. v. Allen CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B306227 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA125580) |
| v. | |
| KELVIN ALLEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Norm Shapiro, Judge.  Reversed and remanded with directions.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S.

Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kelvin Allen, convicted in 1997 of first degree murder with a special-circumstance finding the murder had been committed during a robbery, appeals the superior court's order denying his petition for resentencing under Penal Code section 1170.95[1] without appointing counsel or conducting an evidentiary hearing. Because the jury's felony-murder special-circumstance finding, made nearly two decades before the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), does not establish Allen's ineligibility for resentencing as a matter of law and the superior court engaged in factfinding not permitted before an order to show cause issues, we reverse and remand with directions to appoint counsel for Allen, issue an order to show cause and conduct further proceedings in accordance with section 1170.95, subdivision (d).

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Allen's Felony-murder Conviction*

Our opinion affirming Allen's judgment of conviction describes the evidence presented at trial and the jury's verdict. (*People v. Allen* (Jan. 21, 1998, B109471) [nonpub. opn.].)

On Tuesday evening, September 5, 1995, Juan Discaneno and several friends were in his apartment playing cards and drinking beer. Alex Rivera had ridden to the apartment on his new, expensive mountain bike. When Rivera arrived, Arturo Lopez, who lived downstairs in the same building, was already

_____

[1]    Statutory references are to this code.

2

there.  About 8:00 p.m. Lopez asked Rivera if he could borrow his bike to go for more beer at a liquor store a few blocks away.  Rivera said yes.

About the same time Angel Munoz returned home from work, parked in his driveway and saw Lopez, whom he knew from the neighborhood, coming toward him on a bike.  He also saw a group of five men and one woman walking behind Lopez.

Lopez, Munoz and one of Munoz's neighbors all went together to the liquor store.  When they entered, only the store owner was present.  Lopez brought Rivera's bike inside the store with him.  The three men went to the beer cooler.

Allen, who was known to the store owner, and a second young man entered the store.  As Allen moved around the store without selecting anything to buy, the owner became concerned.  A third young man entered the store, and Allen and his companion left.

Munoz purchased a case of beer, put it on his shoulder and began to follow first Lopez and then his neighbor out of the store.  As Munoz reached the door, he saw a man hit Lopez in the face.  Other men, who appeared to Munoz to be the same men who had been inside the store, were also waiting outside.[2]

Once outside the store, Munoz saw the man who had struck Lopez try to hit him again.  Lopez was on the ground, not moving.  When Lopez's assailant appeared to remove something from his waistband, Munoz ran home to get a machete.  As Munoz left, he saw all five men near Lopez.  When Munoz returned with his

---

[2]     The young man who had remained in the store pushed Munoz from behind before Munoz was able to walk outside, causing the case of beer to fall and break apart.  When the store owner saw that interaction, he called the 911 emergency number.

weapon, the men who had attacked Lopez were gone.  Lopez was on his back, motionless, choking on his own blood.  Munoz remained with him until the police arrived.  Munoz was unable to identify any of Lopez's assailants.

Jessica Herron and Shelli Frazier witnessed the incident from their car, which was in a left turn lane facing the liquor store's entrance.  Herron saw a man pull Lopez off the bike immediately outside the store and then saw five or more men kick and beat Lopez while he was on the ground.  She was unable to identify any of them.

For her part, while waiting to turn left, Frazier saw the individual on a bike hit or pushed to the ground.  Then a group of men "kicked and stomped" the victim.  Some of the men fled, but three remained and continued to attack the victim before they also fled.  Two weeks after the incident Frazier positively identified Allen from a photographic display as one of the last three men who had assaulted Lopez.  She was unable to identify him at trial.[3]

Patricia Lopez was also in her car near the liquor store when the assault occurred.  She saw four men push a man off a bike and kick him after he fell.  One of the men (not Allen) slammed the victim's head into the sidewalk.  Ms. Lopez then saw one of the men take the bike and flee.  The other assailants also left the area.  Ms. Lopez identified Allen as one of the attackers in a photographic display two weeks after the crime.

---

[3]     Several months after identifying Allen in the photographic display, Frazier failed to identify Allen in a live lineup.  At trial, when asked if Allen was one of the men who had kicked and stomped Lopez, Frazier testified, "I am not sure if that's him."

4

She again identified him at trial, testifying she was "very sure" he was one of the perpetrators.[4]

Lopez died five days after the attack. The doctor who performed the autopsy testified Lopez died from blunt trauma to the head, explaining Lopez had injuries to his head, chest, back, arms and legs, including three skull bone fractures that had caused bleeding to the brain. There were more than 40 other blunt force injuries to Lopez's body.

The jury found Allen guilty of first degree murder (§ 187, subd. (a)) and robbery (§ 211), with true findings the murder had been committed during the commission of a robbery (§ 190.2, subd. (a)(17)) and Allen had personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The court sentenced Allen, who was 17 years old at the time of the robbery murder, to an indeterminate state prison term of 25 years to life.

We affirmed the judgment on appeal, rejecting Allen's arguments there was insufficient evidence of his identity as one of the perpetrators, the court had erred in refusing to give the CALJIC instruction concerning the sufficiency of circumstantial evidence and the court had erred in refusing to include Allen's proposed modification of the CALJIC instruction on eyewitness identification. (*People v. Allen*, *supra*, B109471.)

   2. *Allen's Petition for Resentencing*

On March 2, 2020 Allen, representing himself, filed a petition for resentencing under section 1170.95 and requested the

---

[4]    Five months after the photographic identification, Ms. Lopez failed to identify Allen at a live lineup, identifying another individual instead. She testified that, when she got home after the lineup, she realized she had made a mistake. She identified Allen at his preliminary hearing, as well as at trial.

court appoint counsel to represent him in the resentencing proceedings. Allen checked several boxes on the printed form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), effective January 1, 2019.

The superior court summarily denied the petition the day it was filed.[5] The court explained its ruling on the record, "Petitioner was convicted in 1997 of first degree murder. I have reviewed all the materials, and it is evident to me that this petitioner was not just a mere bystander but had a very active role in the killing. In fact, petitioner was the person who inflicted the great bodily injury during the robbery in which there was more than one participant. This petitioner acted with malice and with complete disregard for human life. Therefore, based on the petitioner's request for review, I have completed my review and find that I must deny this request." In its written ruling the court stated, "A review of the court of appeal opinion filed January 1998 indicated petitioner was a major participant and acted with conscious disregard/indifference to human life in a group beating over the course of a robbery in which death occurred. Based on the above, the request of the petitioner is summarily denied."

---

[5] Allen's petition was heard by Judge Norm Shapiro, who had presided at Allen's trial and sentencing hearing. (See § 1170.95, subd. (b)(1) [the petition should be heard by the judge who originally sentenced the petitioner, if available].)

Allen filed a timely notice of appeal.[6]

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839 (*Gentile*)) and significantly limited the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236 (*Rodriguez*), review granted Mar. 10, 2021, S266652; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.) Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Gentile*, at p. 859.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), prescribes a process for the court to determine whether to issue an order to show cause and hold an evidentiary hearing to consider if the murder conviction should be vacated and the petitioner

---

[6] At the request of the Allen's appointed appellate counsel, we augmented the record on appeal by incorporating the record from *People v. Allen*, *supra*, B109471.

7

resentenced on any remaining counts.[7] The superior court properly proceeds under subdivision (c) in two steps, "one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95— that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493; accord, *People v. DeHuff* (2021) 63 Cal.App.5th 428, 436; *People v. York* (2020) 54 Cal.App.5th 250, 262, review granted Nov. 18, 2020, S264954; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, review granted Sept. 23, 2020, S263939; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684 [section 1170.95, subdivision (c), contemplates only one prima facie review before an order to show cause issues].)

Once the section 1170.95, subdivision (c), prima facie showings have been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing

[7] Section 1170.95, subdivision (c), provides, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *Rodriguez*, *supra*, 58 Cal.App.5th at p. 230, review granted; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

> 2. *The Jury's Felony-murder Special-circumstance Finding Does Not Preclude Relief as a Matter of Law*

Section 189, subdivision (e), added to the Penal Code by Senate Bill 1437, permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

Nearly two decades after Allen's trial and conviction the Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 identified several factors a court should consider in determining whether a defendant was a "major participant" under section 190.2,

9

subdivision (d): "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

The *Banks* Court explained that, to determine whether the defendant acted with reckless indifference, courts must "look to whether a defendant has "'knowingly engag[ed] in criminal activities known to carry a grave risk of death.""'" (*Banks*, *supra*, 61 Cal.4th at p. 801.) As further refined in *Clark*, *supra*, 63 Cal.4th at page 617, "reckless indifference" "encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. . . . [R]ecklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'"

Notwithstanding the detailed amplification of the requirements for finding a felony-murder special-circumstance allegation true in *Banks* and *Clark*, the Attorney General contends the jury's special circumstance finding in this case, unless first set aside in a habeas corpus proceeding, precludes Allen's resentencing under section 1170.95 as a matter of law. We rejected this argument in *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021,

10

S267802. (Accord, *People v. Secrease* (2021) 63 Cal.App.5th 231, 254-255 [a prior jury felony-murder special-circumstance finding cannot defeat a prima facie case for entitlement to relief under section 1170.95, subdivision (c), absent a judicial determination the evidence was sufficient to support it under *Banks* and *Clark*]; *People v. York*, *supra*, 54 Cal.App.5th at p. 262, review granted ["a pre-*Banks* and *Clark* special circumstance finding— necessarily made on the basis of our former, and significantly different, understanding of what the terms 'major participant' in the underlying felony and 'reckless indifference' to human life meant—does not preclude relief under section 1170.95 as a matter of law"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 ["the trial court erred by concluding the special circumstance finding, on its own, rendered Law ineligible for relief—that is, the court erred by failing to determine whether Law qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*"]; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011 [because no court has affirmed the special-circumstance findings at issue post-*Banks* and *Clark*, "[t]here is therefore a possibility that Torres was punished for conduct that is not prohibited by section 190.2 as currently understood"]; but see *People v. Nunez* (2020) 57 Cal.App.5th 78, 93, review granted Jan. 13, 2021, S265918 [disagreeing with *York*, *Law* and *Torres*].)[8]

---

[8] Whether a felony-murder special-circumstance finding made before *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95 is pending

11

### 3. *The Superior Court Improperly Engaged in Factfinding Before Issuing an Order To Show Cause*

In *Verdugo, supra*, 44 Cal.App.5th 320, review granted, we held, after determining the section 1170.95 petition is facially sufficient and prior to appointing counsel, the superior court may, pursuant to section 1170.95, subdivision (c), examine the readily available portions of the record of conviction to determine whether the petitioner made a prima facie showing that he or she now could not be convicted of first or second degree murder and thus is eligible for relief under section 1170.95. (*Verdugo*, at pp. 329-330, 332.) At this stage, the court may summarily deny the petition only if the petitioner's ineligibility for resentencing is established as a matter of law. (*Id*. at pp. 330, 332-333; accord, *People v. Smith* (2020) 49 Cal.App.5th 85, 92, review granted July 22, 2020, S262835 ["[i]f it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"].)

What the court may not do without issuing an order to show cause and conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d), is weigh the evidence and engage in factfinding. (See, e.g., *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"]; *People v. Drayton, supra*,

before the Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606.

12

47 Cal.App.5th at p. 968 ["[T]he trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law. . . . In assessing the petitioner's prima facie showing, the trial court should not weigh evidence or make credibility determinations"].) Yet that is precisely what the superior court did here, denying Allen's petition because "it is evident to me that this petitioner was not just a mere bystander but had a very active role in the killing" and had "acted with malice." The court erred in summarily denying Allen's petition based on its evaluation of the facts recited in the record of conviction. (See *People v. Harris, supra,* 60 Cal.App.5th at p. 958, review granted.)

    4. *The Superior Court's Error Was Not Harmless*

As an alternative to his argument regarding the preclusive effect of a pre-*Banks/Clark* felony-murder special-circumstance finding, the Attorney General contends any error the superior court made by engaging in prohibited factfinding was harmless because review of the record of conviction, including our opinion on Allen's direct appeal, demonstrates Allen is ineligible for relief as a matter of law. (See *People v. Law, supra,* 48 Cal.App.5th at p. 825, review granted [the superior court's error in concluding the special-circumstance finding, on its own, rendered petitioner ineligible for relief was harmless because the record demonstrates he qualified as a major participant who had acted with reckless indifference to human life under *Banks* and *Clark*]; but see *People v. Smith, supra,* 49 Cal.App.5th at p. 95 ["By ruling prior to the appointment of counsel, the trial court deprived Smith of the opportunity to develop, with the aid of counsel, a factual record beyond the record of conviction. Only after giving a petitioner the opportunity to file a reply, in which

13

he may develop a factual record beyond the record of conviction, is a trial court in a position to evaluate whether there has been a prima facie showing of entitlement to relief"].)[9]

We agree an erroneous ruling by the superior court is harmless if the record of conviction indisputably establishes the petitioner's ineligibility for relief as a matter of law.  But the record here falls far short of meeting that standard.

As discussed, our opinion affirming Allen's convictions concerned the sufficiency of the eyewitnesses' identification of him as one of the participants in the robbery and group assault of Lopez, not the elements of the felony-murder special-circumstance finding.  Nonetheless, nothing in our opinion indicated Allen planned the robbery.  Neither Allen nor any of the other assailants was armed.  Although Allen may have been one of the individuals who pushed Lopez off the bike, the only testimony on the point was that someone other than Allen had slammed Lopez's head into the sidewalk.  To be sure, Allen was an active participant in the beating, and the jury found he had inflicted great bodily injury on Lopez during the robbery.  But the

_____

[9]     The Attorney General acknowledges the superior court denied Allen's petition based on its own review of the record and did not consider the jury's felony-murder special-circumstance finding, let alone evaluate that finding under the criteria established in *Banks* and *Clark*.  Nonetheless, he argues the order can be affirmed if the ruling was correct on any lawful basis.  (See *People v. Smithey* (1999) 20 Cal.4th 936, 972 ["""[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.  If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion""""].)

Attorney General has cited nothing in the record that suggests Lopez's death was anything but the product of the foreseeable risk of death inherent in any violent felony—a risk the Supreme Court in *Banks* held was insufficient to establish reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum"].)

When fully evaluated at a hearing held for that purpose, the evidence of Allen's participation in the beating and robbery of Lopez may prove beyond a reasonable doubt that he acted as a major participant in the crimes with reckless indifference to human life within the meaning of *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. It is insufficient, however, to show he is ineligible for relief as a matter of law. (Cf. *In re Scoggins* (2020) 9 Cal.5th 667, 682 ["the evidence in this case 'does not suggest an elevated risk to human life beyond those risks inherent in an unarmed beating and robbery'"].)

Indeed, even the Attorney General, after summarizing the facts as stated in our opinion affirming Allen's conviction and reviewing the *Banks*/*Clark* factors, was prepared to say only that "the evidence strongly supported an inference that appellant was a major participant in the robbery who acted with reckless indifference to life"—not that the evidence established the requisite elements as a matter of law. The Attorney General's unwillingness to be more emphatic about the state of the record mirrors the reservations about Allen's role in the robbery murder expressed by the trial court at sentencing: "[M]y reservation is, who struck the fatal blow and who actually took the bike and who

was the instigator?  Where the defendant fits in all that, no question he's involved and responsible, because he helped set it in motion.  And whether the victim was kicked or his head hit on the ground, again, defendant helped to set that chain of circumstances in motion."

On this record we cannot conclude the superior court's improper factfinding before appointing counsel and holding an evidentiary hearing was harmless.

5.  *The Remedy:  Remand for an Evidentiary Hearing*

Because the petition and the readily available portions of the record of conviction before the superior court did not indisputably establish Allen's ineligibility for resentencing, the court should have appointed counsel to represent him, directed the People to file a response to the petition, permitted Allen's appointed counsel to file a reply and then determined whether Allen had made a prima facie showing he is entitled to relief, as specified in section 1170.95, subdivision (c).  (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 326, review granted.)  However, the augmented record on appeal now includes the record from Allen's direct appeal, and there has been full briefing by both parties on the issue whether Allen is ineligible for relief as a matter of law.  Accordingly, unnecessary delay and a waste of resources would be the only products of a remand that did not direct the court to issue an order to show cause and follow the procedure detailed in section 1170.95, subdivision (d).  We decline to require such a needless formality.

## DISPOSITION

The order summarily denying Allen's section 1170.95 petition is reversed. On remand the superior court is to appoint counsel for Allen, issue an order to show cause and conduct further proceedings in accordance with section 1170.95, subdivision (d).

                                    PERLUSS, P. J.

We concur:


        SEGAL, J.


        FEUER, J.